UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 06-50098 |
| versus | JUDGE HICKS |
| THOMAS BURTON | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Before the court is **Defendant's Motion to Suppress Statement (Doc. 25)**. For the reasons that follow, it is recommended that the motion be denied.

### The Facts

An evidentiary hearing was held on November 6, 2006. The evidence establishes that Chasen Swan, a narcotics agent for the Bossier City Police Department, was investigating Barbara Jackson for suspicion of selling methamphetamine. The investigation included making several undercover purchases of methamphetamine from Ms. Jackson. In attempting to determine Ms. Jackson's source of supply, Agent Swan spoke to Sgt. Carl Townley of the Shreveport Mid-Level Narcotics Unit, who told Swan that he thought the source of supply was Defendant.

During Agent Swan's investigation, he went to Ms. Jackson's home to make an undercover purchase. A motorcycle was parked in front of her home. Ms. Jackson stopped Agent Swan in the entry way of the home and did not let him into the home. She told Agent

Swan that the "dope man" was there, and he did not want anyone to see him. She took Agent Swan's phone number, and he left her home. Later, Ms. Jackson called Agent Swan, and Agent Swan made another undercover purchase of drugs from Ms. Jackson.

Agent Swan subsequently received information that Ms. Jackson was staying at the Red River Inn Motel in Bossier City. Surveillance on the hotel room was conducted on May 10, 2006. Defendant and Ms. Jackson were followed by agents as they came and went from the hotel room. Defendant was also followed by police when he traveled by motorcycle to a Red Lobster restaurant.

Based on the various undercover purchases from Ms. Jackson, a state search warrant was obtained for the hotel room. The search was conducted on May 10, 2006. While Agent Swan was the primary case agent, he was not certified for high risk entry into the room, so he did not enter the hotel room until a minute or two after the initial entry was made. Once the entry team "cleared" the room for safety, Agent Swan entered the room. Agent Swan saw Defendant handcuffed on the bed. He walked over to Defendant and advised Defendant of his rights. Specifically, Agent Swan advised Defendant that he had the right to remain silent; that anything he said could and would be used against him in a court of law; that he had the right to an attorney; and he had the right to stop answering questions at any time. Agent Swan then asked Defendant whether he understood those rights, and Defendant stated that he did.

During the search of the room, the officers found narcotics and $17,000 in cash. Agent Swan asked Defendant who owned the drugs, and Defendant responded, "It's all mine." Agent Swan asked Defendant if he went to the Red Lobster to sell drugs. Defendant responded that he went there to have a beer. When asked what he did with the drugs and money while he went into Red Lobster, Defendant told Agent Swan that he left the drugs and the money in the saddle bag on his motorcycle.

During questioning by Agent Swan, Defendant asked for a cigarette, and the officers handcuffed Defendant in the front so he could smoke. Defendant told Agent Swan that he obtains the drugs from a body shop in Texas. He also told Agent Swan that they were purchasing a pound for $15,000. Agent Swan testified that Defendant was cooperative and friendly during the interview.

The search of the room continued while Agent Swan was questioning Defendant. Three handguns were found in a bag on a credenza or table in the room. When the guns were found, Agent Brad Gilpin with the Bureau of Alcohol, Tobacco, Firearms and Explosives was contacted. When Agent Gilpin arrived on the scene, he spoke to Agent Swan's supervisor, Lt. Caskey, and Task Force Agent Thomas Mack. Caskey and Mack told Gilpin that they had arrested an individual in the hotel room and that the individual had a quantity of narcotics, a large amount of cash and three firearms. Gilpin asked Caskey and Mack if he could speak with the suspect, and they agreed. Gilpin asked them if the suspect had been Mirandized, and they told him that he had. Gilpin then entered the room and introduced

himself to Defendant. He asked Defendant if he knew his rights. (Actually, the evidence is unclear as to whether Gilpin asked whether Defendant "knew" his rights, or whether Gilpin asked Defendant if he "understood" his rights.) Defendant answered that he did. Gilpin, who was holding the three guns in a clear evidence bag, asked Defendant about the guns and where Defendant had obtained them. Defendant responded with words to the effect of "here and there," but stated: "I don't want to get into that. It's all mine. I'm going to jail for life anyway."

Agent Swan prepared a very detailed, 19-page report following Defendant's arrest. However, Agent Swan's report makes no mention of any of the inculpatory statements that Agent Swan attributes to Defendant. Agent Swan testified that it had been a "long day" and that he had "no excuse" for leaving that information out of his report.

Defendant also testified at the suppression hearing. He denied that he was advised of his Miranda rights, and he denied that he made the incriminating statements that Agent Swan and Agent Gilpin attribute to him.

**Analysis**

While Defendant denies making the incriminating statements to Agents Swan and Gilpin, the evidence at the suppression hearing shows that the statements were, in fact, made. Both Agent Swan and Agent Gilpin provided credible testimony that Defendant claimed ownership of the guns and drugs. It is curious that the statements were omitted entirely from Agent Swan's otherwise detailed and lengthy report. For the purposes of Defendant's

motion, however, the undersigned finds that the statements were made. The only question remaining is whether Defendant's statements should be suppressed because they were not freely and voluntarily made and/or because Defendant was not advised of his rights pursuant to Miranda.

A confession is voluntary if it is the product of the defendant's free and rational choice; it is voluntary in the absence of official overreaching either by direct coercion or subtle psychological persuasion. U.S. v. Bell, 367 F.3d 452, 460-461 (5th Cir. 2004); U.S. v. Mullen, 178 F.3d 334, 341 (5th Cir. 1999). The statement must be voluntarily, knowingly and intelligently made, and the individual confessing must be cognizant of the rights being abandoned and the consequences of doing so. U.S. v. Santiago, 410 F.3d 193, 202 (5th Cir. 2005).

When the defendant challenges the voluntariness of his confession, the government must prove its voluntariness by a preponderance of the evidence in order for the confession to be admissible as substantive evidence at trial. U.S. v. Clay, 408 F.3d 214, 221 (5th Cir. 2005). Voluntariness is evaluated based on the totality of the circumstances, including the characteristics of the accused and the details of the interrogation. Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). See also U.S. v. Barlow, 41 F.3d 935 (5th Cir. 1994). Factors include the age of the accused, his intelligence and education, advice regarding his constitutional rights, length of detention, repeated and prolonged nature of the questioning

and whether physical punishment such as deprivation of food or sleep was imposed. Id. No case turns on the presence or absence of a single factor. Id.

The evidence shows that Defendant's statements were freely and voluntarily made. Immediately after the search team entered and cleared the room, Agent Swan entered the room, made contact with Defendant, and advised Defendant of his Miranda rights. Defendant stated he understood his rights. Defendant was polite and cooperative. He asked for his cigarettes, and his handcuffs were moved to the front to allow him to smoke. There was no prolonged or hostile questioning by either Agent Swan or Agent Gilpin. While there were several officers and agents moving around in the room during the search, Defendant was not threatened or intimidated in any way. Defendant had prior felony convictions and was, therefore, familiar with the investigative and judicial processes. Based on the totality of the circumstances, the undersigned finds that Defendant's statements to Agent Swan and Agent Gilpin were freely and voluntarily made after a valid waiver of Miranda rights.

Accordingly;

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress (Doc. 25)** be **denied.**

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Cr. P. 59(b)(2). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 16th day of November, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE